UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILAL A., <br><br> Petitioner, <br><br> v. <br><br> MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States, <br><br> Respondents. | No. 1:25-cv-01715-KES-HBK (HC) <br><br> ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS <br><br> Doc. 1 |

This habeas action concerns the re-detention of petitioner Bilal A., a noncitizen who was detained and released in 2022 then recently re-detained.[1] For the reasons explained below, the petition for writ of habeas corpus is granted.

/ / /

/ / /

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

I.   **Background**[2]

Petitioner is a 31-year-old asylum-seeker from Turkey who entered the United States without inspection on August 21, 2022.  Doc. 6-1, Jerome Decl. at ¶ 6.  That same day, immigration authorities apprehended and detained him.  *Id.*  Nine days later, on August 30, 2022, immigration officials provided petitioner with a notice of custody determination which informed him that he was being released "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act[,]" which is codified at 8 U.S.C. § 1226.  Doc. 2-8, Ex. E.  Immigration officials also provided petitioner with an order of release on recognizance which stated that he was being released "in accordance with" 8 U.S.C. § 1226, provided he comply with certain conditions.  *Id.*  The regulations that authorize immigration authorities to release a noncitizen on his own recognizance require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following his release, petitioner established a life in San Francisco, California.  Doc. 1 at ¶¶ 28–39.  Petitioner met his wife, who is a U.S. citizen, and they were married in December 2023.  *Id.* ¶¶ 34–36.  Petitioner's wife gave birth to their daughter in July 2025.  *Id.* ¶ 37.  Petitioner was granted work authorization and worked as a parking valet to provide for himself and his family.  *Id.* ¶¶ 30, 39.  And even though the government had not initiated removal proceedings against him, petitioner retained an attorney and filed an application for asylum with United States Citizenship and Immigration Services ("USCIS").  *Id.* ¶¶ 28–30.  Petitioner's wife also began the process of petitioning for residency for him by applying for a spousal visa.  *Id.* ¶ 33.  Respondents do not dispute petitioner's assertion that he maintained a clean criminal

---

[2] The facts set out in this section come from petitioner's verified petition and other evidence in the record.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

2

record, and they do not allege that he violated any condition of his release. *Id.* ¶ 66; *see* Doc. 6.

On October 10, 2025, petitioner reported for his annual check-in at the Immigration and Customs Enforcement ("ICE") office in San Francisco. Doc. 1 at ¶ 40. Petitioner states that, after waiting for some time, ICE agents told him to go to the fifth floor so that he could sign paperwork and leave. *Id.* ¶ 41. When he arrived on the fifth floor, ICE agents arrested him. *Id.* ¶¶ 41–42. ICE informed his wife that he had been detained because he did not have a court date. *Id.* ¶ 43. ICE agents also told petitioner that he was being placed into expedited removal proceedings. *Id.* ¶ 44. Petitioner is now detained at Mesa Verde ICE Processing Center. *Id.* ¶ 16. Respondents assert that petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1). Doc. 6-1, Jerome Decl. at ¶ 14.

## II. Procedural History

On December 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2, arguing that his detention violated the Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedure Act. The Court issued a briefing schedule and informed the parties that it intended to rule directly on the petition. Doc. 4. Respondents filed an opposition on December 9, 2025. Doc. 6. Petitioner filed a reply on December 11, 2025. Doc. 7.[3]

## III. Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has

---

[3] While respondents did not request a hearing, petitioner requested a hearing to address respondents' arguments. *See* Doc. 7 at 2. Based on the parties' briefing and given the Court's familiarity with the legal issues presented in this case, the Court finds that a hearing is not necessary.

served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**IV.     Discussion**

Before turning to petitioner's due process claim, the Court notes that the parties dispute the applicable statutory detention authority.  Petitioner argues that 8 U.S.C. § 1226(a) applies, while respondents argue that petitioner is subject to 8 U.S.C. § 1225(b)(1).  Doc. 6 at 2–4; Doc. 6-1, Jerome Decl. at ¶ 14.

Respondents' argument has no merit.  Section 1225(b)(1) applies to "an alien . . .who is arriving in the United States or . . . [a]n alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ." 8 U.S.C. § 1225(b)(1)(A)(i), (iii)(II).  Respondents' records establish that petitioner has been physically present in the United States since August 2022—over three years before the government charged him as inadmissible on November 13, 2025.  Doc. 6-1, Jerome Decl. at ¶ 11; Doc. 6-2, Ex. A.  As someone who has been physically present for over two years, petitioner is not "an alien . . . who is arriving in the United States."  *See Al Otro Lado v. Wolf*, 952 F.3d 999, 1012 (9th Cir. 2020) (explaining that a "person standing at the border is . . . [at] the penultimate stage in the process of arriving in the United States" within the meaning of section 1225).

Respondents' records also establish that petitioner was released "in accordance with" 8 U.S.C. § 1226(a).  Thus, 8 U.S.C. § 1225(b)(1) cannot be applied to petitioner.  And to the extent respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies, that argument is incorrect for the reasons set forth in *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025).  Instead, the discretionary detention authority of 8 U.S.C. § 1226(a), which applies to "aliens already in the country," applies to petitioner, *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018), as reflected in both the notice of custody determination and the order of

release on recognizance. Doc. 2-8, Ex. E.

The Court therefore turns to analyze petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a

parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Immigration officials' release of petitioner pursuant to 8 U.S.C. § 1226(a) was similar. Among other things, it allowed him to live and work in the community, to marry a U.S. citizen and start a family, to provide for his family, and to apply for asylum. The Court finds that petitioner has a protected liberty interest in his release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate his liberty.

### 2. *Mathews* Factors[4]

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation may be evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and

---

[4] Respondents argue, citing *Demore v. Kim*, 538 U.S. 510 (2003), that the *Mathews* factors do not apply because the Supreme Court has not utilized those factors in evaluating a due process challenge to immigration detention. *See* Doc. 6 at 4–5. This argument is unpersuasive for two reasons. First, *Demore* involved a facial challenge to 8 U.S.C. § 1226(c). *See id.*; *Pham v. Becerra*, 717 F. Supp. 3d 877, 885 (N.D. Cal. 2024) (explaining that *Demore* involved a facial challenge). Here, in contrast, petitioner raises an as-applied challenge to his re-detention without a bond hearing. The *Mathews* factors are more appropriately utilized in an as-applied challenge because, as the Ninth Circuit has noted, "Mathews remains a flexible test" that accounts for the competing interests of an individual detainee and the government. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Second, respondents argue that the *Mathews* factors are inapplicable without proposing an alternative test to evaluate the due process issue. *See* Doc. 11 at 8. Courts in this circuit regularly employ the *Mathews* factors to evaluate the due process argument that petitioner makes here. *See e.g.*, *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263, at *4–6 (N.D. Cal. Aug. 21, 2025); *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL 1853763, at *1 (N.D. Cal. July 4, 2025). Respondents do not offer a persuasive reason to depart from this practice.

>administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been released on his own recognizance for over three years prior to his recent detention, and during that time, he married a U.S. citizen, started a family, and worked to support them. His detention denies him that freedom.

Respondents argue that petitioner's interest is low because his detention is mandatory under § 1225(b). Respondents are incorrect that petitioner is subject to mandatory detention, as explained above and as documented in their own exhibits. *See, e.g.*, Doc. 6-1, Ex. A ("In accordance with [8 U.S.C. § 1226] . . . you are being released on your own recognizance provided that you comply with the following conditions."). Respondents further argue that petitioner's interest is low until his detention becomes prolonged, citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). But in *Zadvydas* the noncitizen had a pending removal order; the Court in *Zadvydas* invoked the constitutional avoidance canon to read an implicit limitation into the amount of time the government can detain a noncitizen after the noncitizen has been ordered removed. *See id.* In contrast, petitioner's case concerns the liberty interest he developed while he was released on his own recognizance for over three years before ICE re-detained him. *Zadvydas* did not consider a noncitizen in petitioner's circumstances; petitioner does not have a pending removal order. There is a meaningful distinction between detention pending removal, at issue in *Zadvydas*, and re-detention for removal proceedings after an extended period of release. In the latter instance, the government has made an implicit promise to the noncitizen that they will not be re-detained pending removal proceedings so long as they abide by the conditions of their release.

Turning to the second *Mathews* factor, "the risk of an erroneous deprivation [of liberty] is

1  high" where, as here, "[the petitioner] has not received any bond or custody redetermination
2  hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal.
3  May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is
4  justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*,
5  533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and
6  respondents do not dispute that he has complied with all terms of his release. *See* Doc. 6. As
7  there have been no procedural safeguards to determine if petitioner's re-detention is justified, "the
8  probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL
9  1424382, at *5.[5]

10  Third, although the government has a strong interest in enforcing the immigration laws,
11  the government's interest in detaining petitioner without a hearing is "low." *Ortega v. Bonnar*,
12  415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093–95
13  (E.D. Cal. 2025). In immigration court, custody hearings are routine and impose a "minimal"
14  cost. *Doe*, 2025 WL 691664, at *6. "If the government wishes to re-arrest [petitioner] at any
15  point, it has the power to take steps toward doing so; but its interest in doing so without a hearing
16  is low." *Ortega*, 415 F. Supp. 3d at 970. The government's interest is further diminished where a
17  noncitizen "has consistently appeared for [his] immigration hearings for more than two years and
18  [] does not have a criminal record." *Pinchi v. Noem*, No. 25-CV-05632-RMI (RFL), 2025 WL
19  1853763, at *2 (N.D. Cal. July 4, 2025).

20  On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which
21  should have been provided before petitioner was detained. "'[T]he root requirement' of the Due
22  Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived
23  of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542
24  (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127
25  ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

---

[5] Respondents argue that the available procedure is the ability to seek relief from removal by filing an application for asylum. Doc. 6 at 6–7. Petitioner's ability to seek relief from removal is not at issue here. Petitioner seeks relief from unlawful detention.

kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Doe*, 787 F. Supp. 3d at 1093–95; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

### V.    Conclusion and Order

Accordingly, the petition for writ of habeas corpus, Doc. 1, is GRANTED. Respondents are ORDERED to release petitioner immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

The Clerk of Court is directed to close this case and enter judgment for petitioner.

IT IS SO ORDERED.

Dated:    December 16, 2025

UNITED STATES DISTRICT JUDGE

9